US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

FEB 17 2026

Clerk

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAMES VIGIL,                          )
                                      )
        Movant,                       )
                                      )
vs.                                   )    Civil No. 6:26-cv-_____
                                      )    Crim No. 6:19-cr-60001-SOH-1
UNITED STATES OF AMERICA,             )
                                      )
        Respondent.                   )

### MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, JAMES VIGIL ("Vigil"), appearing *pro se,* and in support

of this memorandum would show as follows:

### I. JURISDICTION

Vigil is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence by

a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion")

contemporaneously with this Memorandum of Law. Jurisdiction is vested in this

District Court that presided over and imposed sentence pursuant to Rule 4(a) of the

Rules Governing § 2255 Proceedings. See *Liteky v. United States*, 510 U. S. 540, 562

(1994). Under 28 U.S.C. § 2255, federal prisoners "claiming the right to be released

upon the ground that the sentence was imposed in violation of the Constitution or

1

laws of the United States" may move the district "court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

## II. STATEMENT OF THE GROUNDS FOR REVIEW

A.    Whether, the Government committed Prosecutorial Misconduct.

B.    Whether pretrial counsel's failure to: (1) Communicate with Vigil and correctly inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial; (2) Conduct an adequate and independent pretrial investigation; and (3) Attempt to negotiate a favorable Plea Agreement deprived Vigil of effective assistance of pretrial counsel under the Sixth Amendment of the Constitution of the United States.

C.    Whether, trial counsel's failure To: (1) Inform Vigil of his strategy, any affirmative defenses and his theory of his defense; (2) Raise issues to help prove Vigil's case.

D.    Whether sentencing counsel's failure to: (1) Review, discuss or explain the Presentence Report ("PSR") to Vigil prior to sentencing hearing; (2) File substantive objections to the PSR; (3) Argue for mitigation of punishment and object to his sentence being substantively unreasonable; and (4) Failure to preserve meritorious issues for Appeal deprived Vigil of effective assistance of sentencing counsel under the Sixth Amendment, a fair and just sentence.

# III. STATEMENT OF THE CASE

## A. Procedural Background

On August 16, 2019, the grand jury sitting in the United States District Court for the Western District of Arkansas, Hot Springs Division, returned a two (2) Count Superseding Indictment charging Vigil. See Doc. 34.[1] Counts 1s and 2s charged Vigil with Felon in Possession of A Firearm, in violation to 18 U.S.C. §§ 922(g)(1), (g)(3), and 924(a)(2). *Id.*

On December 3, 2019, a 3-day jury trial was held. See Docs. 56, 59, 60.

On December 5, 2019, the jury trial returned a guilty verdict as to Vigil on Count 1s and not guilty on Count 2s. See Docs. 61, 62, 68, 69.

On July 17, 2024, Vigil was sentenced to a term of 120 months' imprisonment, 3 years of Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $100. See Docs. 86, 88.

On July 29, 2024, Vigil filed a Notice of Appeal. See Doc. 90.

On May 29, 2025, the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit") affirmed the District Court's Judgment. See Doc. 104.

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Western District of Arkansas, Hot Springs Division in Criminal No. 6:19-cr-60001-SOH-1, which is immediately followed by the Docket Entry Number.

**B.** **Statement of the Relevant Facts**

    1.    Offense Conduct

The government and Vigil, through the advise of his counsel, agreed to the following:

On October 16, 2018, investigators with the 18th East Drug Task Force were contacted by Arkansas Department of Community Corrections parole officers in reference to a home visit that they were conducting at 148 Truett Trail in Hot Springs, Arkansas. The residence was the home of parolee, James Vigil, his girlfriend, Brandi Leonard ("Brandi"), and Brandi's eight-year-old son. During a search of the residence, the following items of contraband were found: a clear plastic baggie containing approximately 0.4 grams of suspected heroin; a plastic bag containing approximately 3.3 grams of marijuana; a plastic bag containing approximately 1.5 grams of a crystal-like substance; a plastic bag containing approximately 0.9 grams of a crystal-like substance; a metal spoon with residue; numerous used syringes; two sets of digital scales; three glass marijuana pipes; numerous empty plastic bags with residue; and a metal case that contained a Taurus PT738 .380 caliber semiautomatic pistol bearing serial number 08834C which was loaded with one round in the chamber and six rounds in the magazine.

Vigil arrived at the residence while the search was taking place. He told officers at the residence that everything at the residence was his, including the gun and the drugs, and pleaded that Brandi not be taken into custody. Later that day, when Vigil was questioned by agents, he once again stated that the drugs and the gun were his, and asked if there was any way that Brandi would not be charged with a crime.

The drugs found during the search of Vigil's residence were sent to the Arkansas State Crime Laboratory for analysis. The analysis concluded that the substances were as follows: 0.02062 grams of Fub-Amb (a synthetic cannabinoid); 2.1903 grams of green vegetable matter (not tested); 0.0285 grams of a white crystalline substance (not tested);

2.7564 grams of marijuana; 2.0935 grams of green vegetable matter (not tested); and 0.0375 grams of methamphetamine.

See Doc. 83 at 1-2.

### 2. Trial Proceeding

On December 3, 2019, a 3-day jury trial was held before Honorable Susan O. Hickey. See Doc. 56. At trial, Probation Officer Becca Hines testified that she supervised Vigil starting in January 2018 and that he admitted to heroin use and had failed drug tests, the last being in July 2018. She confirmed he completed treatment and tested clean in September 2018. Hines did not participate in the October 16, 2018, home visit during which Vigil was arrested.

ACC Officer John Weaver testified that he conducted the October 16 home visit. Upon entering Vigil's residence, he observed marijuana and drug paraphernalia in plain view. A subsequent search uncovered a loaded Taurus .380 pistol in a briefcase in the bedroom. According to Weaver, Vigil spontaneously stated, "It's not a Ruger; it's a Taurus," and admitted the gun and drugs were his.

Investigator Scott Kluesner of the Garland County Sheriff's Office assisted with evidence collection but acknowledged that no fingerprints or DNA were obtained from the firearm or other items. He could not definitively link Vigil to the evidence apart from its presence in his residence.

Forensic chemist Hunter Wayland confirmed that substances found in the residence tested positive for methamphetamine and marijuana.

ATF Agent Edwin Starr verified that the firearm was operable and manufactured in Brazil, satisfying the interstate commerce element under § 922(g). Homeland Security Agent Roger Danner interviewed Vigil post-arrest. Vigil waived his *Miranda* rights, admitted to owning the drugs and gun, stated he had fired it previously, and identified the bedroom as his. In rebuttal, Danner testified that Brandi, the woman present at the home during the search, initially denied but later admitted knowing about the firearm. She said Vigil had acquired it two weeks earlier and refused to get rid of it.

Sergeant Josh Heckel testified that he recovered the Mossberg shotgun during a search at the home of Natashia Aspinwall, who claimed Vigil had loaned her the weapon. Aspinwall, testifying under a cooperation agreement, admitted to prior drug use with Vigil and confirmed her possession of the shotgun. Her credibility was challenged on cross-examination due to conflicting statements and her desire for leniency.

The defense was unable to call Brandi Leonard after she invoked her Fifth Amendment right. Defense Investigator Michael Schriver testified that Brandi previously stated she purchased the Taurus pistol, stored it in a locked case, and

intentionally kept it from Vigil due to his felony status. The lockbox was admitted into evidence.

Diane Scroggins testified that she sold the firearm to Leonard—not Vigil—and never saw Vigil handle it. Daniellia Bogert, Brandi's neighbor, testified that she helped Leonard use the gun for target practice. She described Brandi keeping it secured in a combination lockbox, and confirmed that Vigil was not present on either occasion.

The government recalled Agent Danner in rebuttal. He testified that Brandi admitted to drug use and knowing about the gun, and claimed Vigil brought the firearm into the home.

On December 5, 2019, Vigil was convicted on Count 1s and acquitted on Count 2s. See Doc. 62.

### 3. Sentencing Proceeding

On July 17, 2024, a Sentencing Hearing was held before Honorable Susan O. Hickey. See Doc. 86. The Court sentenced Vigil to a term of 120 months' imprisonment and the Count 2s in the Superseding Indictment was dismissed. See Doc. 88. It is followed by 3 years of Supervised Release. *Id.* This Court also ordered payment of a Mandatory Special Assessment Fee of $100. *Id.* On July 29, 2024, Vigil filed a Notice of Appeal. See Doc. 90.

7

4. <u>Appellate Proceeding</u>

On appeal, pursuant to *Anders v. California*, 386 U.S. 738 (1967), appointed counsel filed a no-merit brief. Any potentially meritorious issues—such as whether the district court erred in denying Vigil's motion for judgment of acquittal or committed procedural error in calculating his guideline range—were addressed in detail in the Argument section.

Counsel respectfully requested that the Court grant leave to withdraw from further representation of Vigil. Counsel also asked the Court to conduct an independent review of the entire record to determine whether any non-frivolous grounds for appeal existed and, if such issues were found, to appoint substitute counsel to pursue them in order to fully protect and preserve Vigil's rights.

On May 2, 2025, the Eighth Circuit affirmed the judgment of the district court, dismissed the appeal and granted counsel's motion to withdraw. See Doc. 104. Vigil did not file a Petition for Panel Rehearing, a Petition for Rehearing En Banc, or a Petition for a Writ of Certiorari to the U. S. Supreme Court.

## IV. <u>COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255</u>

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify

relief for a federal prisoner who challenges the imposition or length of his or her detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Deltoro-Aguilera v. United States*, 625 F.3d 434 (8th Cir. 2010). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief."*Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014). However, a district court need

9

not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Franco v. United States*, 762 F.3d 761 (8th Cir. 2014). "Under 28 U.S.C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U.S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, defendant must show that (1) his counsel's representation fell below an objective standard of

10

reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993)(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Second Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice

11

was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U. S. 759 (1970). "[T]o prove prejudice, [defendant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S.Ct. 1399 (2012); *Lafler v. Cooper*, 132 S.Ct. 1376 (2012); *Premo v. Moore*, 131 S.Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S.Ct. 1473, 1480-81 (2010).

In an effort to provide guidance as to how *Hill* applies to differing factual settings, the Supreme Court decided *Lafler* and *Frye* and established a constitutional standard applicable in all of the separate phases of a criminal trial to which the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand

12

trial, a defendant must show that, but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

Finally, in a ruling on a motion under § 2255, the District Court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

## V. DISCUSSION

As a preliminary matter, Vigil respectfully requests that this Court be mindful that *pro se* pleadings are to be construed liberally. See *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) ; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

### A. The Government Committed Prosecutorial Misconduct.

The Government violated Vigil's due process rights by knowingly presenting, relying upon, and failing to correct false and misleading testimony and impressions concerning the circumstances of Vigil's arrest and the purported legality of Officer

13

Weaver's conduct. Under *Napue v. Illinois*, 360 U.S. 264 (1959), and *Giglio v. United States*, 405 U.S. 150 (1972), the prosecution may not knowingly use false testimony or allow false impressions to go uncorrected when they relate to material issues in the case. The Eighth Circuit has repeatedly held that a *Napue* violation occurs not only when testimony is literally false, but also when it creates a materially misleading impression that the Government knows or should know is untrue. See, e.g., *United States v. Bass*, 478 F.3d 948, 951–52 (8th Cir.); *United States v. Foster*, 874 F.3d 412, 414–15 (8th Cir.).

Here, the prosecution advanced and relied upon a false narrative that Vigil's arrest resulted from a routine probation "home check," while suppressing the materially different reality that Officer Weaver was acting in coordination with a months-long narcotics investigation—Operation White Horse—that had failed to develop probable cause sufficient to obtain a warrant. Officer Weaver's reports and testimony omitted his role in that operation and falsely implied that his actions were limited to probation supervision. The Government knew or should have known that this characterization was misleading, particularly in light of contemporaneous public reporting describing Operation White Horse as a planned, multi-agency investigation culminating in coordinated arrests.

14

The falsity of the probation narrative was further exposed by the testimony of Officer Rebecca Hines, Vigil's assigned probation supervisor, who stated that she was not informed of, involved in, or aware of any probation violation or enforcement action against Vigil. This testimony directly contradicted the Government's theory that Officer Weaver's conduct was a lawful probationary search. Yet the prosecution failed to correct the false impression left with the court that the entry, search, and arrest were valid probation actions. Under Eighth Circuit law, the Government's duty to correct false or misleading testimony applies even where the falsehood arises through omission or implication rather than explicit statement. See *United States v. White*, 724 F.3d 714, 718 (8th Cir.).

The Government also failed to disclose material evidence showing coordination between probation officers and narcotics investigators, including planning, communications, and policy violations related to the prohibition on "stalking horse" searches. This evidence was favorable to the defense and directly relevant to the suppression issue. The Eighth Circuit recognizes that suppression of such evidence—when it bears on the credibility of law enforcement witnesses or the legality of the investigation—constitutes a *Giglio* violation. See *United States v. Duke*, 50 F.3d 571, 577 (8th Cir.).

15

Materiality under *Napue* and *Giglio* requires only a "reasonable likelihood" that the false testimony or misleading impression could have affected the judgment of the court or jury—a standard significantly lower than the harmless-error standard. See *United States v. Martin*, 59 F.3d 767, 770 (8th Cir.). That standard is easily met here. The false probation narrative insulated Officer Weaver's conduct from Fourth Amendment scrutiny, foreclosed meaningful suppression litigation, and allowed constitutionally tainted evidence to form the basis of Vigil's arrest and prosecution. Had the true nature of the operation been disclosed, the court would have been required to assess whether the probation visit was an unconstitutional pretext designed to evade the warrant requirement.

Also, the Federal Court lacked jurisdiction because the arrest and investigation were purely state in nature and no federal nexus existed. The absence of federal jurisdiction in Vigil's case is further confirmed by the Government's own public representations and the evidentiary record. At the time of Vigil's arrest, senior federal prosecutors publicly and unequivocally stated that Operation White Horse—and the arrests resulting from it—were not federal in nature. Specifically, the federal prosecutor for the Western District of Arkansas emphasized in a public statement that the operation was "purely a local and state operation," expressly disavowing federal involvement in the arrests. This representation is critical, as it reflects the

Government's contemporaneous understanding that Vigil's arrest arose solely from state and local law enforcement activity, not from any federal offense.

Despite these public disclaimers, the same federal prosecutor—AUSA Duane Kees—later signed a federal warrant on February 6, 2019, months after Vigil's arrest. This sequence demonstrates that federal jurisdiction was not present at the time of the seizure and was instead retroactively imposed after the fact. Federal criminal jurisdiction cannot be created through post hoc federal adoption of a state case where no federal offense existed at the time of arrest and no federal nexus supported the seizure of the defendant.

The evidentiary record further confirms the absence of a federal nexus. The Government failed to establish any interstate commerce element attributable to Vigil—an essential jurisdictional requirement for the charged federal offenses. No evidence showed that Vigil transported contraband across state lines, engaged in interstate transactions, used interstate instrumentalities, or otherwise affected interstate commerce. The prosecution's theory rested entirely on conduct alleged to have occurred within a single state, arising from a state probation visit at a private residence. Without proof of an interstate commerce connection, the federal court lacked authority to adjudicate the matter.

17

Compounding this jurisdictional defect, key testimony relied upon by the Government concerned evidence allegedly found inside the residence at a time when Vigil was not present. Witnesses acknowledged that the items were discovered while Vigil was absent and further testified that the items were never moved by Vigil. This testimony severed any causal or possessory link between Vigil and the alleged evidence at the critical time of discovery, undermining not only guilt but also the jurisdictional basis for federal prosecution predicated on possession or control. Evidence found in a residence, without proof of possession, dominion, control, or interstate nexus, cannot supply federal jurisdiction.

Taken together, these facts demonstrate that Vigil was arrested during a state operation, for alleged state-law conduct, without a federal warrant, without federal authority, and without any contemporaneous federal offense. The federal government's later decision to assume jurisdiction—after publicly disavowing federal involvement and after evidence was obtained through unlawful state action—cannot cure the original lack of jurisdiction. Federal courts possess criminal jurisdiction only where Congress has authorized prosecution and where the elements of a federal offense, including interstate commerce where required, are supported by evidence. Those prerequisites were absent here. Because Vigil's arrest was state-based, unsupported by a federal nexus, contradicted by the Government's own public

statements, and retroactively federalized without evidentiary support, the federal court lacked jurisdiction to impose sentence.

In sum, the Government secured Vigil's prosecution by advancing a false narrative, failing to correct materially misleading testimony, and suppressing evidence revealing the true nature of the investigation. These actions violated the Government's obligations under *Napue* and *Giglio*, insulated unconstitutional conduct from judicial scrutiny, and undermined the integrity of the proceedings. Because there is at least a reasonable likelihood that the Government's misconduct affected the outcome, Vigil was denied due process, and relief is required.

B. <u>Counsel's Failure To: (1) Communicate with Vigil and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (2) Conduct An Adequate and Independent Pretrial Investigation; and (3) Attempt to Negotiate A Favorable Plea Agreement Deprived Vigil of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.</u>

1. <u>Communicate with Vigil and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty as Opposed to Proceeding to Trial</u>

Chapter 1, Rule 1.4: Communication of the Arkansas Rules of Professional Conduct states that:

19

(a)     A lawyer shall:

(1)     promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

(2)     reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3)     keep the client reasonably informed about the status of the matter;

(4)     promptly comply with reasonable requests for information; and

(5)     consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b)     A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between an attorney and client is a cornerstone of effective representation and essential to the client's ability to meaningfully participate in his own defense. *Strickland v. Washington*, 466 U.S. 668, 688 (1984), recognizes that counsel must bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. The Eighth Circuit has similarly acknowledged that a lack of communication between attorney and client can support an ineffective assistance of counsel claim, especially where it results in the client being uninformed

about the case or coerced into a plea. *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836–37 (8th Cir. 2005); *Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006).

In this case, Alex Wynn ("Wynn"), assisted by James Pierce ("Pierce"), served as Vigil's appointed counsel from the pretrial stage through appeal. Wynn met with Vigil approximately once per month prior to trial, with meetings typically lasting only 20–30 minutes. Although Wynn accepted phone calls from Vigil, substantive strategic discussions were minimal. Notably, this matter constituted Wynn's first jury trial, and Pierce—who was purportedly assisting—met with Vigil no more than twice.

After Pierce was introduced, Vigil expressly requested that counsel file a motion to suppress based on a "stalking horse" theory. Rather than investigating the factual basis for the request or explaining how Eighth Circuit precedent would apply to Vigil's circumstances, counsel summarily dismissed the issue by handing Vigil a printed copy of *United States v. Knights* and labeling the proposed motion "frivolous." Counsel did not analyze the facts of Vigil's case, distinguish controlling authority, or explain how the court would likely resolve the issue—conduct that falls short of the duty to provide reasoned strategic advice. See *Strickland v. Washington*, 466 U.S. 668 (1984); *Kimmelman v. Morrison*, 477 U.S. 365 (1986); *United States v. Rodriguez*, 799 F.3d 1222, 1227–28 (8th Cir. 2015) (counsel ineffective where failure to litigate suppression issue stemmed from lack of investigation rather than

21

strategy).

When Vigil stated that he would attempt to file the motion *pro se*, he asked counsel where and how such a motion could be filed. Counsel never responded and failed to advise Vigil that, under well-established Eighth Circuit law, a represented defendant has no right to hybrid representation and that any *pro se* filing would be summarily rejected by the court. See *United States v. Mosley*, 607 F.3d 555, 558 (8th Cir. 2010); *United States v. Williams*, 534 F.3d 980, 984 (8th Cir. 2008). Counsel also failed to warn Vigil of this consequence before he drafted the motion, leaving him to act under a mistaken belief that the court would consider his filing.

In sum, Wynn did not reject Vigil's request based on informed strategy, but rather dismissed it without investigation, without meaningful explanation, and without advising Vigil of the procedural realities governing *pro se* filings while represented by counsel. Under Eighth Circuit precedent, such conduct reflects deficient performance where counsel fails to investigate a potentially dispositive suppression issue or adequately consult with the defendant regarding available legal options and their consequences.

Accordingly, Vigil's conviction and sentence should be vacated, and he should be afforded the opportunity to proceed to trial with effective representation.

2. Failure to File Any Substantive Pretrial Motions and An Adequate and Independent Pretrial Investigation

Despite clear constitutional and factual grounds warranting pretrial litigation, Wynn failed to file any substantive pretrial motions on Vigil's behalf. Most notably, Wynn did not file a motion to suppress challenging the warrantless entry, search, detention, and arrest arising from Officer Weaver's conduct, even though the circumstances strongly indicated a pretextual probation search used to further a broader criminal investigation.

The record provided ample notice that the alleged "home check" was not a legitimate probationary action. Officer Weaver entered the residence without consent, without a warrant, and without exigent circumstances, detained a non-probationer at gunpoint, searched property beyond the scope of any probation condition, and coordinated Vigil's arrest without lawful authority. Further, Vigil's assigned probation officer testified that she had no knowledge of, involvement in, or justification for a probation violation, eliminating any valid supervisory purpose for the entry. Public reporting contemporaneous with Vigil's arrest further established that law enforcement had been conducting a months-long narcotics investigation—Operation White Horse—that had failed to develop probable cause sufficient to obtain a warrant.

Rather than investigating these facts, consulting applicable probation policy, or litigating the constitutional violations, counsel summarily dismissed Vigil's request for a suppression motion without analysis and characterized the issue as "frivolous." Wynn did not test the credibility of Officer Weaver's report, which omitted his role in Operation White Horse, nor did counsel challenge the legality of the search, seizure, or arrest through pretrial motion practice. This failure cannot be characterized as a strategic choice, as it was made without investigation, legal analysis, or meaningful consultation with the client.

Pretrial motions—particularly motions to suppress—serve a critical gatekeeping function by preventing unlawfully obtained evidence from forming the basis of prosecution. Here, the government's case flowed directly from the unconstitutional entry and arrest. Had Wynn filed a suppression motion, the court would have been required to scrutinize the legality of the officers' conduct before trial, potentially resulting in suppression of key evidence or dismissal of charges. Wynn's complete failure to pursue any substantive pretrial relief deprived Vigil of this essential protection and allowed constitutionally tainted evidence to go unchallenged.

Defense counsel has a constitutional duty to conduct a "reasonably substantial, independent investigation" into both the facts of the case and applicable law to

provide effective assistance. See *White v. Roper*, 416 F.3d 728 (8th Cir. 2005). This duty is well established by the Supreme Court in *Strickland v. Washington*, which states:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

In this case, Wynn wholly failed to conduct a constitutionally adequate pretrial investigation. Specifically:

    a.    Failing to Investigate and Litigate a Meritorious "Stalking Horse" Suppression Claim

        i.    The Record Establishes a Pretextual Entry and Search Designed to Evade the Warrant Requirement

The evidence demonstrates that Officer Weaver did not conduct a legitimate probation "home check," but instead acted as a stalking horse for a broader, multi-agency narcotics investigation—Operation White Horse—that lacked probable cause to secure a warrant after nearly five months of investigation. The news

coverage describing the scope, duration, and warrant-based nature of Operation White Horse.

Officer Weaver falsely characterized his entry as a routine probation visit while omitting material facts from his report—namely, that he was assisting Operation White Horse and using probation access to circumvent the Fourth Amendment's warrant requirement. This subterfuge directly contravenes Arkansas Community Correction (ACC) policy prohibiting probation officers from "acting as a stalking horse" for law enforcement investigations unrelated to probation supervision.

Critically, Officer Rebecca Hines, Vigil's assigned probation supervisor, testified that she had no knowledge of, involvement in, or justification for a probation violation, and that Vigil had done nothing to warrant enforcement action. This testimony eliminates any legitimate probationary purpose for Weaver's actions and confirms the entry was investigatory, not supervisory.

> ii. Officer Weaver Exceeded Any Permissible Scope of a Probation Search

Even assuming, *arguendo*, that Officer Weaver's initial presence at the residence could be characterized as a permissible probation visit, his conduct quickly exceeded both constitutional boundaries and governing probation policy. Officer Weaver entered the residence without a warrant, without consent, and in the absence

26

of any exigent circumstances, claiming only that he needed to "verify occupancy." At the time of entry, Vigil was not present. Instead, his girlfriend, Brandi, was alone inside the home. Brandi was not on probation, was not suspected of any criminal activity, and retained full Fourth Amendment protections against warrantless entry and search.

Once inside the residence, Officer Weaver asserted that he observed what he "thought could be" a small amount of marijuana on a dresser. Rather than pursuing any lawful probationary search consistent with that observation, he abruptly abandoned any legitimate supervisory purpose and instead detained Brandi at gunpoint. This detention was unsupported by probable cause, was unrelated to any valid probation objective, and constituted an unreasonable seizure under the Fourth Amendment.

Officer Weaver further exceeded his authority by searching items that were not owned, possessed, or controlled by Vigil. Any probationary search condition applies only to the probationer and property under the probationer's control; it does not authorize generalized rummaging through a residence or the search of a non-probationer's personal effects. Weaver's actions therefore fell well outside the narrow scope of any permissible warrantless search.

After unlawfully entering the home, detaining a non-probationer, and conducting an impermissible search, Officer Weaver then summoned additional law enforcement officers to locate Vigil and waited for his return. Vigil was ultimately arrested without a warrant, without probable cause, and without lawful authority to effect an in-home arrest. These actions were not spontaneous or reactive but reflected a coordinated, pre-planned investigatory effort.

Taken together, Officer Weaver's warrantless entry, armed detention of a non-probationer, unauthorized search of third-party property, and orchestration of Vigil's arrest demonstrate that the purported probation visit was merely a façade. The probation search was used as a pretext to further a broader criminal investigation, rendering Officer Weaver's conduct a classic example of an unconstitutional "stalking horse" operation designed to evade the Fourth Amendment's warrant requirement.

c.     Failure to Investigate the Role of Officer Weaver in the Arrest

The original charges against Vigil arose under state jurisdiction. Operation White Horse, a multi-agency investigation involving Homeland Security Investigations, culminated in a news conference celebrating the conclusion of a five-month heroin investigation. During this event, AUSA Duane Kees indicated that

28

State Prosecutor Trent Daniels (Special AUSA) would oversee the operation and manage Vigil's state case, ultimately presenting it to a federal grand jury.

The decision to prosecute federally relied heavily on Officer Weaver's account of events. However, Weaver's testimony was inaccurate and misleading, omitting critical facts about the subterfuge employed to bypass standard warrant requirements. Officer Weaver acted unlawfully, under false pretenses, without legal authority to arrest or enter Vigil's home. His false representations directly influenced the grand jury, which made decisions based on misleading information, thereby undermining any claim of federal jurisdiction.

Additionally, the arrest warrant dated October 16, 2018, was never signed by a judge. County jail records inaccurately indicate that the Garland County Sheriff's Office made the arrest. In reality, Officer Weaver conducted the arrest at Vigil's residence and Agents Wilhoite and Danner, administered *Miranda* warnings. The Sheriff's Office's role was limited to transporting Vigil and Brandi to the county jail—they did not effectuate the arrest.

These facts demonstrate that the federal prosecution was predicated on both Officer Weaver's unlawful actions and inaccurate reporting, rendering the federal jurisdiction claim invalid.

> d. Failure to Seek Independent Investigative
> Resources

Wynn failed to file a motion requesting funds for a private investigator, as permitted under 18 U.S.C. § 3006A(e). The Eighth Circuit has emphasized the necessity of utilizing such resources when needed to challenge the government's case. See *United States v. Suttles*, 850 F.3d 314 (8th Cir. 2017) ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Instead, Wynn limited his investigation to reviewing the government's case file and engaging in discussions with the prosecutor, without conducting any independent inquiries to corroborate or challenge the government's evidence.

> e. Prejudice to Vigil

Wynn's failure to conduct a meaningful investigation prejudiced Vigil by depriving him of a viable defense and leaving the government's case uncontested. As the Supreme Court has made clear, "counsel's failure to investigate a potential defense strategy constitutes deficient performance where that failure is not based on reasonable professional judgment." *Wiggins v. Smith*, 539 U.S. at 534.

f.      Had Wynn conducted a thorough investigation

Evidence could have been uncovered to challenge the arrest itself potentially reducing his sentencing exposure under the Guidelines. Investigating alleged evidence, which significantly enhanced his sentence. These failures resulted in Vigil being unprepared to challenge the prosecution effectively, leaving him with no meaningful choice but to proceed trial and prove his innocence. The Supreme Court and Eighth Circuit both recognize that prejudice arises when counsel's failures undermine the reliability of the outcome. See *Strickland*, 466 U.S. at 694; *United States v. McGill*, 11 F.3d 223 (8th Cir. 1993).

In light of the above, Wynn's failure to conduct an adequate and independent pretrial investigation constituted ineffective assistance of counsel under *Strickland*. This deficiency deprived Vigil of the ability to make informed decisions about his defense and undermined the fairness of the proceedings. Therefore, Vigil's conviction and sentence should be vacated, and he should be granted relief to ensure his constitutional rights are preserved.

3.      Failure to Attempt to Negotiate a Favorable Plea Agreement

Effective assistance of counsel during plea negotiations is a cornerstone of the Sixth Amendment. The Supreme Court has emphasized that a defendant must be

31

adequately informed of "the relevant circumstances and the likely consequences" of pleading guilty versus proceeding to trial in order to make an intelligent decision. See *Lee v. United States*, 582 U.S. ___ (2017); *Brady v. United States*, 397 U.S. 742, 748 (1970). Counsel's role includes providing accurate information about potential sentencing exposure, plea offers, and the strengths and weaknesses of the case.

It is well established that when a defendant pleads guilty as a result of inaccurate legal advice, misrepresentations, or deficient performance by counsel, the resulting plea may be involuntary and constitutionally infirm. Under *Strickland v. Washington*, 466 U.S. 668, 688–89 (1984), a defendant is denied effective assistance when counsel's performance falls below an objective standard of reasonableness, and that deficiency prejudices the outcome. In the plea context, *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), applies *Strickland*'s two-part test and makes clear that a guilty plea entered due to misadvice regarding material facts—including sentencing exposure or evidentiary strength—can constitute both deficient performance and prejudice.

The Eighth Circuit has echoed this principle in multiple cases, holding that misleading plea advice, especially when it causes a defendant to forego a trial or plead under coercive misunderstanding, violates the Sixth Amendment. See *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995) ("Defense counsel's failure to inform defendant of material terms of a plea offer or misrepresenting sentencing

32

exposure can constitute ineffective assistance."); *United States v. Davis*, 918 F.3d 397, 403 (4th Cir. 2019) (plea vacated where counsel advised client to accept plea based on fear of life sentence and overstated evidence); *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1106 (8th Cir. 2011) (ineffective assistance found where plea was based on incorrect legal assumptions and misadvice).

In Vigil's case, attorney Wynn did not provide any plea negotiations from the government nor did he attempt to deal with the prosecutor on his behalf. This inaction left Vigil fully exposed to federal prosecution under flawed jurisdictional grounds and deprived him of the substantial benefits a negotiated plea could have provided, including reduced charges, lower sentencing ranges, or preservation of key defenses. Counsel's failure to act demonstrates a lack of diligence and deprived Vigil of a critical opportunity to protect his rights and minimize the consequences of the flawed federal case.

Wynn's failure to verify the existence of trial witnesses, failure to investigate exculpatory or impeaching evidence, and misstatements regarding sentencing exposure all fall below an objective standard of reasonableness. Courts have routinely held that when an attorney provides inaccurate assessments of the government's case or the likely sentence, and that misadvice induces a guilty plea, such conduct satisfies the deficiency prong of *Strickland*. See *United States v. Mooney*, 497 F.3d 397, 401

33

(5ᵗʰ Cir. 2007) ("Misrepresentation of the length of sentence defendant would receive can render counsel's performance deficient."); *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("An attorney who grossly misinforms his client about sentencing exposure may render constitutionally deficient performance.").

Wynn could have acted proactively, investigated the case thoroughly, challenged jurisdictional and procedural defects, and used these facts to negotiate a fair and favorable plea agreement. By doing none of these, Vigil was left exposed to full federal prosecution under invalid circumstances.

C. **Trial Counsel's Failure To: (1) Inform Vigil of His Strategy, Any Affirmative Defenses and His Theory of His Defense; (2) Raise Issues to Help Prove Vigil's Case.**

In this case, Vigil was never provided with a clear explanation of trial strategy or how his counsel intended to challenge the government's case. Wynn could have explained the trial strategy to Vigil, outlining the plan for challenging jurisdiction, evidence, and procedural defects, and advising him on informed decisions about plea negotiations or proceeding to trial. Furthermore, there were several critical aspects of the trial that Wynn either failed to raise or neglected altogether, including:

1. <u>Legality of the Arrest</u>. Wynn could have challenged the warrantless entry by Officer Weaver, demonstrating that the arrest of Vigil was conducted without a valid, signed warrant and outside the bounds of legal authority. The record shows that Officer Weaver entered Vigil's residence under false pretenses,

misrepresented the circumstances of the arrest, and gave false testimony to the grand jury. County records further misattributed the arrest to the Garland County Sheriff's Office, which only transported Vigil to jail. These facts present a clear Fourth Amendment violation, as the arrest lacked the judicial oversight required to protect against unreasonable seizures. A timely motion to suppress statements or evidence obtained as a result of this unlawful entry could have significantly weakened the prosecution's case. (*Payton v. New York*, 445 U.S. 573 (1980); *Atwater v. Lago Vista*, 532 U.S. 318 (2001)).

In *People v. Ooley*, the California Court of Appeal emphasized that a warrant must support a lawful search of a residence, and denying suppression of evidence obtained without appropriate legal authority constituted reversible error. The defendant in *Ooley* moved to suppress items seized following a warrantless search, arguing the entry and seizure violated constitutional protections; the court's analysis reinforced that warrantless searches absent valid justification unlawfully circumvents Fourth Amendment safeguards and taints the evidence obtained.

Similarly, in Vigil's case, officers conducted a warrantless search of his home, removed items for photographs and replaced them without documenting the lawful basis for such conduct, and misidentified the circumstances of the search under oath. This parallels the concerns highlighted in *Ooley* that warrantless entry and seizure of evidence — especially when not justified by consent, exigent circumstances, or legal authority — undermine constitutional protections and justify suppression. Counsel's failure to investigate these circumstances, raise the issue, and file appropriate motions to suppress improperly obtained evidence fell below the standard of reasonable professional conduct under *Strickland v. Washington* and resulted in admission of unlawfully obtained evidence that prejudiced Vigil's defense.

2.  Misrepresentation of Federal Jurisdiction. Wynn could have challenged the legitimacy of federal jurisdiction by exposing that

the prosecution relied heavily on Officer Weaver's false or misleading account of the arrest and investigation. Officer Weaver omitted critical facts regarding the subterfuge used to bypass normal warrant requirements and falsely portrayed the circumstances of Vigil's arrest to both the grand jury and other officials. This misrepresentation formed the foundation of the federal case, which was originally a state matter, and created the appearance that federal authorities had proper jurisdiction when, in fact, none existed. A defense attorney could have filed a motion to dismiss or sought other remedies based on this jurisdictional defect, thereby protecting Vigil from an invalid federal prosecution.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), counsel has a duty to investigate and raise any substantial legal defenses, including jurisdictional challenges. By failing to expose the reliance on Officer Weaver's inaccurate testimony, counsel deprived Vigil of a defense that could have fundamentally undermined the prosecution's authority to bring the case in federal court. The Eighth Circuit recognizes that when a case is pursued in federal court without proper jurisdiction or on the basis of false information, such omissions by counsel are objectively unreasonable and may constitute prejudice sufficient to satisfy *Strickland*. (*Ragland v. United States*, 535 F.3d 820, 823–24 (8th Cir. 2008); *Garrett v. United States*, 990 F.2d 1230, 1235 (8th Cir. 1993)). Had counsel acted, there is a reasonable probability that the federal case could have been dismissed or substantially weakened, materially altering the outcome for Vigil.

3. <u>Chain of Custody and Search Violations</u>. Wynn could have challenged the admission of evidence stemming from an illegal search, as the record demonstrates multiple procedural deficiencies. Officers misidentified themselves during testimony, provided inconsistent accounts of where the firearm and other items were found, and failed to document who handled the evidence at any point. Additionally, the search itself was conducted without a warrant, and items were removed for photographs and later replaced, further undermining the integrity

of the evidence. These serious chain-of-custody and procedural errors raise substantial questions regarding the reliability and admissibility of the firearm as evidence. (*United States v. Ganier*, 468 F.3d 920, 926–27 (8th Cir. 2006)).

Under *Strickland v. Washington*, 466 U.S. 668 (1984), defense counsel is required to investigate and challenge evidence obtained through unconstitutional or procedurally defective methods. By failing to object or pursue suppression based on these violations, counsel deprived Vigil of the opportunity to exclude critical evidence or impeach officer credibility. Had counsel acted, there was a reasonable probability that the jury would have viewed the firearm evidence with skepticism, or that a court might have suppressed it entirely, materially affecting the outcome of the trial. This omission constitutes objectively unreasonable performance that prejudiced Vigil's defense.

4.     <u>DNA and Fingerprint Testing on the Firearm</u>. Here, Wynn could have requested DNA and fingerprint testing on the firearm to determine whether Vigil actually handled it. The record shows that officers conducted a warrantless search, removed items for photographs, and replaced them, while failing to document proper chain of custody or handling. Scientific testing of the firearm could have provided objective evidence to confirm or refute the government's theory of possession. Such testing would have also allowed counsel to cross-examine officers regarding the accuracy of their testimony and the reliability of the evidence presented at trial. (*Garrett v. United States*, 990 F.2d 1230, 1235 (8th Cir. 1993)).

Under *Strickland v. Washington*, 466 U.S. 668 (1984), counsel's duty includes pursuing available avenues to challenge the prosecution's evidence through investigation and forensic analysis. By failing to request DNA or fingerprint testing, counsel deprived Vigil of a meaningful opportunity to dispute possession, impeach witnesses, and undermine the prosecution's case. Had testing been conducted, there is a reasonable probability that the outcome of the trial could have been materially affected, either

37

through weakening the government's case or strengthening grounds for suppression or plea negotiation. This omission represents objectively unreasonable performance that prejudiced Vigil's defense.

5. <u>Irrelevant or Prejudicial Evidence</u>. Wynn failed to object to the introduction of evidence unrelated to Vigil's actual firearm possession charge, including allegations of drug trafficking or other conduct that was not part of the indictment. Allowing such evidence permitted the prosecution to mischaracterize the case, inflating its severity and prejudicing the jury against Vigil. By failing to challenge these misrepresentations, counsel allowed the jury to consider matters outside the scope of the charges, undermining the fairness of the trial. The Eighth Circuit recognizes that counsel's failure to object to clearly prejudicial or irrelevant evidence may constitute ineffective assistance when it affects the reliability of the verdict. (*Garrett v. United States*, 990 F.2d 1230, 1235 (8th Cir. 1993); *Ragland v. United States*, 535 F.3d 820, 823–24 (8th Cir. 2008)).

Under *Strickland v. Washington*, 466 U.S. 668 (1984), defense counsel has an obligation to prevent the admission of evidence that is not only irrelevant but also likely to mislead or inflame the jury. Counsel's omission in this case deprived Vigil of a meaningful defense by allowing the jury to consider allegations that could improperly influence its perception of his guilt on the firearm charge. Had counsel raised timely objections, there is a reasonable probability that the evidence would have been excluded or its impact mitigated, materially improving Vigil's defense and trial outcome.

6. <u>Officer Weaver's Misconduct</u>. Counsel could have investigated and exposed Officer Weaver's unlawful conduct, including the use of subterfuge to bypass normal warrant requirements and his misleading representations to both the grand jury and law enforcement officials. Weaver's false or incomplete account of the events surrounding Vigil's arrest was central to establishing

federal jurisdiction and supporting the prosecution's theory. By failing to investigate or challenge Weaver's credibility, counsel allowed the government's key witness to go unimpeded, giving undue weight to inaccurate testimony and undermining the fairness of the trial.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), defense counsel has a duty to pursue any plausible avenues for impeachment or suppression when a witness's actions or testimony suggest misconduct or constitutional violations. Eighth Circuit precedent confirms that failure to investigate or challenge misconduct by a government officer can constitute objectively unreasonable performance that prejudices the defendant. (*Ragland v. United States*, 535 F.3d 820, 823–24 (8th Cir. 2008); *Garrett v. United States*, 990 F.2d 1230, 1235 (8th Cir. 1993)). Had Wynn acted, Weaver's credibility could have been challenged, key evidence suppressed, and the prosecution's case materially weakened, thereby providing Vigil with a meaningful defense.

It is critical to note that Vigil was never charged with drug possession or trafficking, yet the prosecution repeatedly mischaracterized the case to suggest otherwise. During closing arguments, Prosecutor Harris made statements that were unsupported by the evidence and sought to prejudice the jury by implying Vigil engaged in uncharged "bad acts." Items introduced at trial—such as scales, pictures of his home security system, and documents described as a "drug ledger"—were irrelevant to the firearm possession charge and served only to suggest he was a drug dealer. Officers further reinforced this misimpression, testifying that the investigation targeted heroin dealers, despite no heroin or currency indicative of drug trafficking

39

being found.

These statements and evidence improperly portrayed Vigil as a "sometime weed dealer, sometime heroin dealer, all-time drug user, all-time felon," and suggested that his security system and lockbox were used to facilitate drug crimes. In reality, no evidence supported these assertions, and Vigil was only charged with firearm possession. The introduction of this prejudicial and irrelevant evidence violated Rule 403 of the Federal Rules of Evidence and the principle that a defendant must be tried only for the crimes charged. The Eighth Circuit has recognized that introducing evidence of other alleged bad acts, or making unsupported arguments implying criminality beyond the charges, can deny a defendant a fair trial and constitutes reversible error when it affects the verdict. (*United States v. Underwood*, 446 F.3d 1340, 1343–44 (8th Cir. 2006); *United States v. Henderson*, 413 F.3d 1009, 1013–14 (8th Cir. 2005)).

Here, these improper statements and evidence prejudiced the jury and undermined Vigil's right to a fair trial under the Sixth Amendment. They shifted focus away from the actual charges, ignored the absence of supporting evidence, and contributed to a verdict of guilt where reasonable doubt clearly existed regarding Count 2s-- which he was found not guilty of.

Wynn's repeated failures during trial—including neglecting to challenge the warrantless arrest, failing to investigate Officer Weaver's misconduct, not requesting DNA or fingerprint testing, ignoring chain-of-custody violations, allowing irrelevant and prejudicial evidence, and failing to explain trial strategy—collectively deprived Vigil of the effective assistance guaranteed by the Sixth Amendment. Each omission alone was harmful; together, they undermined the reliability of the verdict, denied Vigil meaningful defenses, and prejudiced the outcome of his trial. Under *Strickland* and Eighth Circuit precedent, these failures constitute objectively unreasonable performance resulting in substantial prejudice, warranting relief.

**D.** **Sentencing Counsel's Failure To: (1) Correctly Discuss and Explain the PSR with Vigil Prior to the Sentencing Hearing; (2) File Substantive Objections to the PSR; (3) Argue for Mitigation of Punishment and Object to His Sentence Being Substantively Unreasonable; and (4) Failure to Preserve Meritorious Issues for Appeal Deprived Vigil of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence.**

In Vigil's case, the cumulative failures of counsel and total lack of preparation for sentencing prejudiced the outcome of sentencing and warrant vacatur of the sentence imposed.

Counsel's duties at sentencing include ensuring that the defendant fully understands the contents and implications of the PSR, raising substantive objections

to incorrect or unsupported enhancements, and advocating for mitigation to secure a fair and just sentence. See *Strickland*, 466 U.S. at 688. Sentencing counsel's failure to fulfill these obligations renders their performance deficient and prejudicial, violating the defendant's Sixth Amendment rights.

Vigil' sentencing counsel, Wynn, failed to review or explain the PSR's findings with Vigil, leaving him unaware of key allegations and enhancements that significantly increased his guideline range. This failure deprived Vigil of his right to make informed decisions and undermined his ability to meaningfully participate in his defense. The Eighth Circuit has consistently held that effective representation requires counsel to review the PSR with the defendant and explain its potential impact. See *United States v. Herring*, 568 F.3d 1062 (8th Cir. 2009) (failure to explain PSR prejudices the defendant by denying an opportunity to address inaccuracies).

Wynn's failure to properly challenge critical PSR findings resulted in unjust sentencing enhancements that significantly increased Vigil's sentence. Wynn failed to raise critical objections during sentencing that could have materially reduced Vigil's offense level and exposure.

First, Wynn did not challenge the underlying gun charge despite Vigil not qualifying as an Armed Career Criminal (ACCA) offender. Under 18 U.S.C. § 924(e), an ACCA designation triggers mandatory minimums and enhanced sentencing based

42

on prior convictions, yet Vigil did not meet the statutory criteria. Failure to challenge the applicability of this designation left Vigil exposed to enhanced penalties that were inapplicable under the law. The Eighth Circuit has consistently held that counsel's failure to object to improper ACCA or firearm-based enhancements constitutes objectively unreasonable performance when it materially affects sentencing. (See *United States v. Garrett*, 990 F.2d 1230, 1235 (8th Cir. 1993); *Ragland v. United States*, 535 F.3d 820, 823–24 (8th Cir. 2008)).

Second, counsel failed to challenge the § 2K2.1(b)(6)(B) firearm enhancement, which increased Vigil's base offense level by attributing the firearm to drug trafficking. Even though Vigil's statutory maximum exposure reached 15 years, recent Supreme Court precedent— *United States v. Rahimi*, 143 S. Ct. 2683 (2023), and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)—clarifies that the government must establish a sufficient connection between the firearm and criminal activity for enhancements to apply. In Vigil's case, the firearm was never fingerprinted or tested for DNA, no lawful search or seizure occurred, and the location of the firearm where it was found was never properly documented. The gun was simply connected to Vigil without any evidence establishing actual possession. This is underscored by the fact that Vigil was acquitted on Count 2s, which charged the same firearm offense as Count 1s, further

43

demonstrating a lack of evidence tying him to the weapon. Counsel's failure to challenge the enhancement in light of these critical evidentiary and constitutional deficiencies deprived Vigil of a viable defense and left the court without reasoned opposition, resulting in a higher guideline range.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), counsel has a duty to pursue all substantial legal arguments that could affect a client's sentence. The Eighth Circuit recognizes that failure to challenge a sentence-enhancing provision, when legally meritorious arguments exist, satisfies the deficiency prong of Strickland and may establish prejudice where the omission results in a longer sentence than would otherwise have been imposed. (See *Garrett*, 990 F.2d at 1235; *Ragland*, 535 F.3d at 823–24). Had counsel properly challenged both the ACCA applicability and the § 2K2.1 enhancement—taking into account the lack of DNA/fingerprint evidence, the unlawful search and seizure, the undocumented firearm location, and the acquittal on Count Two—there is a reasonable probability that Vigil's sentencing exposure and ultimate sentence would have been reduced.

Because the outcome of the sentencing phase was affected by counsel's unchallenged acceptance of these flawed assertions, Vigil was prejudiced, and relief is warranted.

### 3. Failure to Advocate for Mitigation and Object to Substantive Unreasonableness

In this case, Wynn failed to advocate for mitigating factors that could have substantially reduced Vigil's sentence or object to a sentence that was substantively unreasonable. Vigil had a clean probation record, consistently complied with all conditions, and never tested positive for prohibited substances during supervised release. These facts provided strong mitigation evidence demonstrating rehabilitation, law-abiding behavior, and minimal risk of recidivism. By failing to present this information or argue for a downward variance under 18 U.S.C. § 3553(a), counsel deprived Vigil of an opportunity to receive a fair and individualized sentence.

Additionally, counsel failed to object to the substantive unreasonableness of Vigil's sentence. The Eighth Circuit recognizes that a sentence may be substantively unreasonable when it is greater than necessary to achieve the purposes of sentencing, particularly when mitigating factors are ignored or improperly discounted. (See *United States v. Rodriguez*, 569 F.3d 500, 503–04 (8th Cir. 2009); *United States v. Feemster*, 572 F.3d 455, 459–60 (8th Cir. 2009)). By failing to raise these arguments, counsel not only provided ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), but also allowed Vigil to receive a sentence disproportionate to his conduct, prior record, and demonstrated rehabilitation. Had counsel acted, there is a

reasonable probability that the court would have imposed a lower sentence reflective of Vigil's compliance and mitigation factors.

### 4. Failure to Preserve Meritorious Issues for Appeal

Appellate counsel Wynn failed to provide Vigil with meaningful communication or consultation regarding the issues he wished to raise on appeal, instead filing a cursory *Anders* brief that effectively abandoned substantive review. Vigil was not informed of the rationale behind the brief, nor given the opportunity to approve or supplement the claims, leaving him without knowledge of arguments that could have challenged constitutional and legal errors in his conviction and sentence. Had Wynn properly consulted with Vigil, he could have raised meritorious issues, including the illegality of the warrantless arrest, Officer Weaver's misconduct and misrepresentations, the admission of irrelevant or prejudicial evidence, chain-of-custody violations and lack of DNA/fingerprint testing on the firearm, misrepresentation of federal jurisdiction, and errors in sentencing enhancements under §2K2.1(b)(6)(B).

The Supreme Court has emphasized that meaningful consultation between counsel and client is essential to ensure effective appellate advocacy (*Smith v. Robbins*, 528 U.S. 259, 278–79 (2000); *Anders v. California*, 386 U.S. 738 (1967)). Filing an *Anders* brief without investigating the merits or communicating with the

46

client denies the defendant a fair and meaningful appellate review. The Eighth Circuit similarly recognizes that failing to preserve potentially meritorious appellate claims constitutes ineffective assistance when it precludes the appellate court from considering errors that may have affected the conviction or sentence (*United States v. Bush*, 404 F.3d 263, 267–68 (8th Cir. 2005); *Penson v. Ohio*, 488 U.S. 75, 88 (1988)).

By abandoning these claims, appellate counsel deprived Vigil of a meaningful opportunity to challenge serious constitutional and legal errors. There is a reasonable probability that had counsel properly investigated, preserved, and argued these issues, one or more would have resulted in reversal, remand, or a reduction of sentence, materially altering the outcome of his appeal. This failure constitutes objectively unreasonable performance that prejudiced Vigil in violation of the Sixth Amendment (*Strickland v. Washington*, 466 U.S. 668 (1984)).

## VI. CONCLUSION

In light of the foregoing, it is evident that Vigil was deprived of his constitutional right to effective assistance of counsel from pretrial through appeal phases of his case. Counsel's failure to adequately inform Vigil of the implications of his trial, properly object to inaccuracies in the trial, and advocate for a fair and just

sentence constitute deficient performance under the standards established by *Strickland*, and its progeny. These errors prejudiced Vigil, resulting in a significantly harsher sentence than he otherwise would have received had counsel performed competently.

The U. S. Supreme Court has consistently held that a defendant is entitled to effective legal representation at every critical stage of a criminal proceeding, including plea negotiations and sentencing. See *Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012). Here, the failures of Vigil's counsel not only undermined the fairness of the proceedings but also led to a fundamentally unjust outcome.

Had Vigil been properly informed, represented, and advocated for, it is likely he would have received a substantially lower sentence. These failures deprived him of his rights under the Sixth Amendment, warranting the vacatur of his conviction and sentence.

For these reasons, Vigil respectfully requests that the Court grant his § 2255 motion and order appropriate relief, including but not limited to resentencing or an evidentiary hearing to fully assess counsel's deficiencies, resolve facts in dispute between the parties and their prejudicial impact on his case, and to expand an incomplete record.

Respectfully submitted,

Dated: January 31, 2026

_____
JAMES VIGIL
REG. NO. 15295-010
FCI TERRE HAUTE
FEDERAL CORR. INSTITUTION
P.O. BOX 33
TERRE HAUTE, IN 47808
Appearing *Pro Se*